Case No. 12-1021 at L. Venetian Casino Resort, L.L.C. Petitioner v. National Labor Relations Board Mr. Monnier and Mr. Wakefield, Petitioner, Venetian Casino Resort, L.L.C., and Ms. Isbell, the Respondent Good morning, Your Honors, and may it please the Court, John Monnier for the Petitioner. Congress shall make no law abridging the right of the people to petition the government for redress of grievances. That is exactly what the Venetian did in this case. Its grievance was that demonstrators were using the Venetian's private property to hold their demonstration. Its petition was a direct request to the government, specifically the police, who were already present at the demonstration, to keep the peace. How are you petitioning police officers on the scene for redress of a grievance when you've already met with the DA and they've said that they don't believe that there's a trespass? You've met with senior police officials and they've said that they don't believe there's a trespass, and then you learn on top of that that there's a permit that the demonstrators have obtained. Even if all of those people were wrong, even if the permit was issued illegally, how are you redressing for a grievance when you say arrest these people for criminal trespass? Well, Your Honor, that would go to perhaps the futility of the petition, the merits of the petition, the fact that perhaps it was moot at that point or not going to be a viable act. But that doesn't make it any less a petition. You could argue that it was a sham petition, but that was not argued by the board. It's not raised in their decision. They've essentially conceded that the Venetian was making a reasonable effort to preserve its private property rights. Now, ultimately, the Venetian was not successful in those efforts, but there were still good faith efforts. It doesn't make it any less a petition the fact that that may not have been their first petition. So if the NLRB had previously issued some sort of an order saying, you know, allow this demonstration to happen, then the Venetian would be within its First Amendment rights when the demonstration was occurring to ask the local police to arrest the people for trespass? Well, Your Honor, in that case, it might have been within its rights. It might not have been within its rights. That's a hypothetical. It would depend on the facts. Well, I gave you the facts. Yes. Okay. Well, if there was a final order by the board, if there had been a final ruling, and there was no viable chance for relief, it was a done deal, then the argument would be that the petition is a sham, that it has no — it is objectively baseless at that point, and that it was brought for an improper purpose, arguably. I'm going to refer that within your hypothetical. If that were the case, it would be a sham petition, and it comes within the sham petitioning exception, and it's not protected. That's well-settled case law. But that's not our case. The board hadn't spoken. The courts hadn't spoken. The police had said they weren't going to arrest, but that certainly wasn't a final word. And at that point, the issue had not been resolved. And, again, I have to emphasize that the board did not say that this petition was a sham. It is a petition. You know, the Ninth Circuit has said in four of precision, a case that we've cited, and that the board has cited, that making citizen communications with police are protected under the petition clause. And it isn't limited to certain petitions. As long as you're trying to redress a grievance that you have, it is a petition. It is protected. This is not a case like Shurtan, which the board has relied on. In Shurtan, the employer basically was acting as what the law might call an officious intermeddler. It had no interest in the immigration violations of its employees. That case was issued at a time when immigration law, federal law, did not make it illegal for employers to employ undocumented workers. And the employer knew the workers were undocumented. They had acquiesced to it. They were paying them. They only got upset when the workers tried to unionize and got involved into an election campaign. Then they wanted to try to blow the whistle. But they had no personal interest in that issue. The Supreme Court saw right through it and held that that was not protected. Also, that activity was discriminatory. That was an 883 case. I guess what I'm trying to get at is these cases seem to be very fact and context specific. And the context here is that, okay, you've met with the authorities who would prosecute. You've met with senior police officials. You're aware that they have a permit. So exactly how is it that you're petitioning when you tell the cop there, well, arrest these people for trespass despite the fact that all those things have happened and despite the fact that these people have a permit, whether the permit was properly issued or not. They've got one. So what are you petitioning by saying arrest them for trespass when all of those things have transpired and you know that they have a permit? Well, Your Honor, I think that it is fact intensive. You are correct. I would completely agree with that. But what the board is trying to do, because they've conceded effectively that this was not a sham petition, what they have tried to do and what your question is directed at is take it outside of the definition of petitioning completely and say it is actually not a petition. But definitionally, it doesn't make it any less a petition the fact that they may have previously petitioned in this case. It doesn't mean it's not a petition. To go back to your hypothetical, if the board had already definitively ruled in this case or if the courts had ruled, as they eventually did, that the union demonstrators had a right to demonstrate, that came a good at least two years after this petition was made. If that had been the case, it would still be a petition, but it would be a sham petition. Or maybe it would be like the petition in Shorthand, but it would still be a petition. You wouldn't be defining it out of the definition of petition. Don't you have to be petitioning in some sort of way where there's a connect of some sort between who you're petitioning and what you're asking for and what the potential relief is or reasonable relief is? You can't just call any officer and make any request for an arrest and say, oh, my activities are immune because I'm petitioning the government. At the risk of being overly repetitive, I would say that, again, what you just said would be a sham. And our case was not found to be a sham. And it doesn't make it any less a petition the fact that there have been previous petitions. And maybe it was as effective as banging your head against a wall. We had made different arguments, but this was part of an overall strategy to argue that, to try to obtain an injunction. And so the reason that they asked again wasn't because they were expecting a different answer. It was because they thought that they needed to exhaust any possible remedies, arguably, in order to show that there was no other remedy other than an injunction. So that's the real reason why they did that in this case. You know, grant you, the ALJ said that he couldn't find that they weren't acting reasonably. Right. I just don't understand kind of what the petition was. It's a direct communication to the police to try to eject and cite the trespassers. The fact that they didn't believe the officers would grant the petition, and in fact had been basically told in advance that it wouldn't be granted, doesn't make it a non-petition. You would then have to move into whether it's a sham, and that's already been determined that wasn't the case. I want to ask you about a slightly different issue, which is the electronic posting remedy. And that's my colleague, Mr. Wakefield, if I can defer to him right now. And then I'll reserve any time that I have for rebuttal. I want to also clarify that I think we may have goofed up on the timing and it added up to 13. We did want 15 and reserve some time for rebuttal. So I'll let Mr. Wakefield take those questions. Thank you so much. May it please the Court, Matthew Wakefield for Petitioner Venetian Casino Resort. The Board had no jurisdiction to modify the remedy in this case. After the Court remanded to the Board, the sole question of whether summoning the police was protected by the North Pennington Doctrine. Well, before you get to the Board's jurisdiction, my question is the Board says this isn't right because we haven't imposed anything. Why do you think it is right? Because, in fact, the Board has issued a final order in this case. And that order includes the original remedy plus the additional remedy. The additional remedy being the electronic communication with the Venetian's employees. And our position is that the Board had no jurisdiction. When the case was remanded back to the Board, it was solely on the single constitutional issue. And the Board did not have the opportunity to then revisit any part of the remainder of the case and modify the remedy. When the Board added that on, did you seek reconsideration? No, we did not seek reconsideration because we didn't believe it was necessary because, again, the Board didn't have the authority to do that. Even under this Court's jurisprudence, where a motion for reconsideration would be simply an empty formality, there's no necessity to do so. In fact, in the Jay Bassini case, which the Board was simply adding that new remedy on from the year before, that case had been fully argued. There was a majority opinion. There was a dissent. And the same result was added in this case. But had the Board, in this case, wanted to add that remedy, it should have sought that back when the case was before the Board in 2005, before it came to this Court in 2007. So the last opportunity for the General Counsel of the Board to seek that electronic remedy was to file a motion for reconsideration within 28 days of the Board's 2005 decision. The Board can't be allowed to simply, once it gets a case back on a single narrow issue that this Court ruled on, it can't be allowed to simply take it and then add on other things that it didn't have authority to do. But as to the actual electronic remedy itself, we think that that is clearly a problem. The standard for the Board to try to get something like that added in this case, as this Court has articulated in the United Food and Commercial Workers Union case, the Board must prove that the original remedy was clearly inadequate. And it hasn't done so. There's a number of problems with the electronic remedy itself. For example, the Board has in their electronic remedy that the respondent is to communicate however it customarily communicates with employees. Well, to use the phrase customarily in terms of a posting is very simple and straightforward. We know in any business where the posters are hung on the wall. But when we're talking about other types of communication, for example, an invitation to the holiday party, is that a customary communication? Or telling someone what their work schedule is the next week, is that the type of customary communication that the Board is talking about? There's obviously mandatory types of communications, work rules, schedules, and then permissive types of communications that an employer has with employees. We think that the standard that the Board has adopted is too vague to be implemented and is going to only lead to additional problems. Isn't that all the more reason why you should have sought reconsideration so that the Board could have potentially clarified? Or, I mean, we can't, we shouldn't be in the business of figuring out what customarily means, should we? Well, I think we believe, Your Honor, that that is a basis for not enforcing the Board's order because of that vague and ambiguous standard that the Board has established. And so it's not something that should be the basis for a motion for reconsideration because clearly the Board would not have done anything different in this case. I mean, the Board, when they established that in 2010, they've just simply added that on to every case. That is now their standard remedy. So the Board's not going to reconsider it until this Court or another Court tells the Board that it's not going to enforce such an order. But reconsideration could also mean, well, tell us what, we don't know what that means because it's vague. And they can say, okay, we'll tell you what it means. You just have to, if you have an email address on file, then send it as an email attachment and that's it. And the Board has taken the position in its brief in this case that those things are to be addressed in a subsequent hearing. And we believe that obviously that's going to result in even more additional problems as we set forth in our brief. Can I just ask a roadmap question so I'm clear on this? If we agree with your co-counsel on the first point, and I'm not saying I do, just if we do, do we not, we don't get to this issue, correct? That's correct, Your Honor. Okay. My time is up. Thank you. Thank you. May it please the Court, Kelly Isbell here on behalf of the National Labor Relations Board. The company concedes that by asking the police to cite and remove demonstrators, it violated the National Labor Relations Act. And here it concedes that it didn't ask those policemen to cite and remove demonstrators because it actually thought those policemen could do something. It knew those policemen could not do anything about it. The Board, of course, found that by asking the cops on the beat to do something they had no authority to do, that the Venetian was not engaged in direct petitioning under the Act. Doesn't that sound more like a sham? Well, Your Honor, in this particular case, of course, the Board did not reach, did not do a sham analysis. And here's why. In the context of Nora Pennington, there have been very few cases that apply Nora Pennington to the National Labor Relations Act. Bill Johnson's in BE&K, and those are in the context of lawsuits. And the sham analysis set out in BE&K talks about whether the lawsuit is objectively based and for a subjectively bad reason. In the context of removing protesters, lawful, peaceful protesters, from property you don't have a right to, the Board does not do a motive analysis. It doesn't have to. For 75 years, it has not done a motive analysis. If you don't have the right to remove those protesters, you violate the National Labor Relations Act. The other issue is that although the company says they had an objective basis because the lawsuit was still pending in the Ninth Circuit, under, in the removal context under 8A1, they did not have an objective basis. As this Court pointed out in its remand decision, if you remove protesters, you have to have the right at the time you try to eject them. If you don't have the right at the time you try to eject them, you violate 8A1. So in this particular context, the analysis around objective basis doesn't really make any sense. And as the Court cautioned in the remand decision, expanding North Pennington to the labor context can be problematic because you can eviscerate employees' rights under Section 7. Remember, the union had a permit and they were exercising their rights under the Act and their First Amendment rights to engage in a lawful, peaceful protest. So the Ninth Circuit, you're familiar, of course, with the 4-0 case, which said that North Pennington does apply to petitions to the police. It said that the public policy is served by ensuring the free flow of information to the police, although somewhat different from those served by North Pennington are equally strong. It would be difficult, indeed, for law enforcement authorities to discharge their duties if citizens were in any way discouraged from providing information and then apply North Pennington to conversations with the police. Yes, it did. So why should we disagree with the Ninth Circuit? You don't have to disagree with the Ninth Circuit. The Ninth Circuit based its decision on strong public policy interests in encouraging the free flow of information from the citizen to police. They conceded. They were not trying to impart any information to the police. If the union had been blocking traffic, if they'd been throwing rocks, that's a completely different case. You might then be asking the police to do something about it. That's not here. They had met with a district attorney more than once and with police officials to ask them to remove and cite these protesters, and every time they asked, they got the answer from the police officials who had the authority to make the decision. Those cops on the beat were not the officials with the authority to make the decision. Okay, and I'm still – this will be repetitive. I'm going back then to my first question. Why – it still sounds like a petition, but a petition that's not going to succeed. I think in this – in the labor context, having a sham analysis here related to police doesn't really work. I mean, there is no sham analysis that's been devised. Why? When you say they petitioned the police even though they knew there was no chance of the police responding, which, by the way, then – I mean, there's separate issues there. But anyway, that's still a petition, but it's a sham petition because it's subjectively unreasonable to – and subjectively unreasonable to seek the police's aid in those circumstances when you've been told you can't get the police's aid. If you look, for example, at the Hilton case, which describes petitioning government employees, you need to petition the person who has the authority. Not every government employee is a petition receiver. Not every request to a government employee is a petition. And for 75 years, the board and the courts have found that if you try to eject peaceful, lawful protesters, you're violating the national labor relationship. Well, there's not a lot of precedent on this precise Nora Pennington issue. There is not. In the court system. Even on just calling the police, let's take it out of the labor context. There are very, very few cases that talk about calling the police as being a petition. And here, what you're suggesting is that every call to police for every lawful demonstration should be a petition. And that would – And what's the harm? What's the harm? It chills employees' rights to protest. If every time someone's on a public sidewalk, the employer can lawfully call the police, that is a very serious evisceration of rights. And you don't think the sham can help maintain the line between appropriate calls and inappropriate calls to the police? Because you conceded, I think, there could be times when it's appropriate for the employer to call the police. And those are times when the board finds it's not an 8A1 violation. We don't even get to the First Amendment. If the union's blocking traffic and you call the police, unless – those are the bare facts. It's not an 8A1 violation. But aren't there going to be a lot of gray areas? That's going to be the – in the real world, as you know better, there are going to be a lot of gray areas where one side thinks it's doing nothing problematic and the employer – I mean, the employees think they're doing nothing problematic and the employer thinks they are. That's true. And when the board gets those cases, it looks to state law to determine who had the right to the sidewalk. And if the employer didn't have the right to the sidewalk and they remove those or try to remove those protesters, it's an 8A1 violation. The problem I have is to rule your way, I think, to say that Noor Pennington doesn't apply to calls to the police. I don't think you do, Your Honor. And I think the board was very careful not to say that all calls to the police are not immune under Noor Pennington. This is a very specific, fact-intensive case. And under Ally 2, I would suggest you look at the context and nature of this particular dispute. The board is not saying all calls to the police are not protected. How would the board view a factual scenario if the call were, you know, these people are getting out of hand and there's pushing and shoving and rocks being thrown or whatever, and that were what the call to the police was about? How would the board view that? Of course, as you know, I can't exactly predict what they'll say, but on those facts, it's not an 8A1 violation. We never get to the First Amendment because the board would not find a violation of the National Labor Relations Act. You can call the police to protect your property. You can call the police if the union protesters infringe on your property, but if they're on the public sidewalk and they're peaceful and lawfully demonstrating, you can't eject them. And that's what this case is about. And remember, as you pointed out in your remand decision, you have to have the right at the time. The fact that they thought they had the right and were going to raise it in the Ninth Circuit under the National Labor Relations Act is irrelevant. And the Supreme Court cautioned in B, E, and K that considerations under the Act, the National Labor Relations Act, are different than those in the antitrust context. It would be very difficult to just take the antitrust sham analysis and plop it down on this situation, when, as I've explained, the board doesn't make motive determinations in these cases and the objective basis analysis would be different here than it would be in the antitrust context because as long as you don't have the right at the time, what you think you have is irrelevant. So are you saying you could never really have a bright line here because it would sort of depend? In other words, if you call the police, you are taking the chance that you are violating the Act because they may read the facts differently than you do. That's true. And that happens in a lot of labor cases. If you, for example, make unilateral changes to a contract, you're sort of, even if you believe you can because the union has no more support, you're taking that on yourself. It might turn out that you're right and you don't violate the Act, but it also might turn out that you couldn't make those unilateral changes. So it happens a lot. But the difference here would be that perhaps you're infringing on the First Amendment right, whereas in the other circumstance it would just be a legal right. Right. And if the employer does not have the right, they are also infringing on the union's First Amendment rights. The union also has the right to protest. What happens in a case where, say, there's a strike in a picket line by a union and there are workers who are crossing the picket line and the employer says, you know, the union's making physical threats to harm people crossing the picket line. How does Noor Pennington fit into that analysis? I think we'd probably get back to where we were before it doesn't because if there are actual threats against those line crossers, there's no 81 violation. I mean, if there are actual threats, we don't get to the First Amendment. We don't find a violation of the National Labor Relations Act. What if the board finds that, you know, they called and said that there were threats, but, you know, we hear all the evidence and we conclude that, you know, there weren't any threats, they made that up? Then that might be a harder case. The board might very well find that if they had a reasonable basis that it's, I don't know. This is the very first Noor Pennington case. Noor Pennington, 1960s, this is the first one. That's good in that sense. So have fun with it? But I hesitate to suggest another round of this litigation, but analytically it does seem cleaner, clearer, to say Noor Pennington generally can apply to calls to the police, but there may be circumstances where it's a sham that probably map very well onto what you're talking about in terms of general labor law principles. So just hypothetically, and I'm not saying I'm there, but if I conclude that Noor Pennington does apply to calls to the police and think therefore we have to vacate and remand, what could happen on the remand? Well, I would ask that you do remand for the board to get the first crack at trying to decide what the correct analysis would be, because as I've discussed, B, E, and K doesn't really work. So what would happen on the remand? Who knows. Right. Right, but some, okay. But some, okay, that answers it. Would you like to discuss electronic notice posting? I guess not. No, I don't have any questions. Okay. Thank you very much. Thank you, Your Honors. Mr. Wakefield has graciously agreed to cede his rebuttal time to me, so I just want to address some points that counsel just made. Let me be clear. We have made no concessions in this case other than those that we are required to make under the law of the case doctrine, in terms of holding that this Court previously made when I argued before this Court nine years ago. We've not conceded that we violated the NLRA. That's why we're here, because we're saying that we didn't. Now, if we were in a world where there was no First Amendment and no right to petition in that world, I can see how this would be deemed an NLRA violation. But, again, that's the basis of our doctrine. Our argument is that this falls into the Norah Pennington doctrine and that there is no sham here. I want to make clear, too, that while the Board is entitled to deference on how to interpret the NLRA, it is not entitled to deference on how to interpret the Constitution in general or the First Amendment doctrine in particular. And I think this argument gives a very good illustration of why that's not the case. The fact that a petition may not succeed does not make it any less a petition. And let me borrow from the argument about the electronic posting notes. Let's assume the Court were to agree with our position that it would have been futile for the Venetian to do a motion for reconsideration and, therefore, it was not required for exhaustion purposes. But then let's suppose that the Venetian had decided to do that anyway and make the motion for reconsideration, even though it knew that it had a 100% chance of failure because J. Passini was extremely clear that it's going to require electronic posting in all cases. It wouldn't make the motion for reconsideration any less a petition. It wouldn't make it unprotected activity. Now, I can't imagine how it would violate the NLRA, but it's still a petition. The lawyers make petitions all the time that they know are going to fail. And they do it mainly because they usually either out of an overabundance of caution, which is very much a province of our profession, or because they think that they really think they have to do it in order to preserve a certain right. And that's in several categories of what the Venetian did here. There are petitions and there are petitions, though. I mean, a petition to a police officer saying, arrest that man, deprive him of his liberty, put him in handcuffs and take him away, and put him in a secure jail cell is a lot different than filing in the middle of a union protest demonstration is a lot different than filing some piece of paper with the board. No, sure. Asking someone for an arrest is a very serious matter. Now, this petition, there was the citizen's arrest, which has already been decided in this case, so that's not an issue before this court. It's the request of the police. And my understanding is it was only to cite and eject what the Venetian believed were the trespassers. Mrs. Bell called it a public sidewalk. Again, that was the subject of the litigation. Our view was that it wasn't public. We had the right to exclude. We had a substantial legal basis for that argument. The Ninth Circuit even agreed with that. They just said that it was a public forum for a bunch of issues that aren't really pertinent to our discussion. But this wasn't the same as if we had said, you know, they're trespassing at Caesars Pass, which obviously the Venetian would have no concern with, or if they're jaywalking across Las Vegas Boulevard, or that they're conducting their picket across the street but it's obviously directed at the Venetian. If the Venetian had called the police in those circumstances, then clearly there would have been no objective basis, because the Venetian wouldn't have been trying to assert its own rights in its private property. It would have simply been trying to interfere with the union demonstration. And therefore, the sham petitioning doctrine would have applied. And while there is no prior case that is held that basically weds the Forco case or Foro case with the NLRA context, there is case law on sham petitioning in the NLRA. Bill Johnson's and B, E, and K are Norr-Pennington cases. They apply to lawsuits that were alleged to have been unfair labor practices. So the only thing different about this case is that it applies specifically to police activities. And if you have malicious calls for unfounded arrests or things like that that an employer does, that's going to fall within the sham petitioning doctrine. There's no basis for a different conclusion. And it's interesting, because on the one hand, the board says that the sham analysis should not apply to the NLRA. And I'm simply not persuaded that there's anything unique about the NLRA that changes the constitutional sham petitioning analysis that applies to other statutes, including the NLRA under Bill Johnson's and B, E, and K. And to the extent that the board is also saying now that we had no objective basis to contact the police and ask them to cite and eject the demonstrators, that argument's about 16 years late in this case. This demonstration occurred in 1999, and today is the first time that they have said that we had no objective basis. We would obviously prefer a remand to enforcement of the decision, but the board had its chance. They already had one remand. And we made these arguments to the board. And I think it's time to just say that the board got it wrong. I think the court's certainly capable of crafting a decision that's not going to encourage employers to just maliciously call up and try to arrest people for no reason. But if the employer, and again, this was a very unique case. There was a lot of litigation going on about the Venetians' property rights. And they filed a whole big federal lawsuit about this. And they thought that asking the police, they knew the police would say no, but they thought that asking them would help them to show that they were entitled to an injunction because there was no adequate remedy at law. And lawyers, we know that it's difficult to get injunctions. And you have to show that injunction is really the only remedy. And so they thought that. Now, this court actually disagreed with that in a sense when it issued its last decision, that that was really an adequate basis. But it was still good faith. I mean, they made it wrong. They lost. Thank you, counsel. Thank you so much, Your Honor. The case will be submitted.
judges: Brown, Kavanaugh, Wilkins